**Cordell and Excel C. BROOKS**

v.

**UNITED STATES of America.**

**Civ. A. No. 6150.**

United States District Court,
M. D. Tennessee,
Nashville Division.

Oct. 27, 1971.

James L. Fuqua, Jr., Quentin L. Householder, Nashville, Tenn., for plaintiffs.

Charles H. Anderson, U. S. Atty., Nashville, Tenn., Jay R. Weill, Tax Div., Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM

MORTON, District Judge.

This is a tax refund action in which the plaintiffs seek to recover $219 paid as federal income taxes for the calendar year 1968, plus statutory interest. Jurisdiction is conferred by 28 U.S.C. § 1346(a) (1).

The statutes involved are §§ 61 and 105(d) of the Internal Revenue Code, which are set forth in Appendix A to this Memorandum. The regulations involved are Treasury Regulations 1.105–4 and 1.79–2(b) (3), the latter being set forth in Appendix B to this Memorandum.

The facts involved are stipulated. Plaintiff Cordell Brooks was placed on a disability pension by his employer effective December 1, 1967, for reasons of disability under the incapability provision, Sec. IV A(3) of duPont's Pension and Retirement Plan. Cordell Brooks was born on August 8, 1907. It is the policy of duPont to require every employee to retire from its employ at the

end of the month in which he reaches 65 years of age. Plaintiff, who had worked 37 years for duPont prior to his disability retirement, was 60 years of age as of said date of retirement.

Plaintiffs included in their 1968 income tax return the amount of $2,784 received by Cordell Brooks as pension income under the aforementioned pension plan. A timely claim for refund was filed which was rejected by the Treasury Department, and this action was commenced within the applicable time requirements as provided by the Internal Revenue Code.

It was further stipulated that the plaintiff, Cordell Brooks, would have testified that were it not for his disability, he would have continued to work for duPont until attaining the mandatory retirement age of 65, or until he was in some other manner required to leave his job.

The sole question is whether the income received by plaintiff in 1968 under the pension plan was or was not gross income under § 105(d) of the Internal Revenue Code.

Since Cordell Brooks had reached the age of 60, the age at which he could voluntarily retire under the duPont pension plan, the Treasury Department asserts that age 60 was the "retirement age" under its Regulation 1.79–2(b) (3). Thus, the Treasury Department contends that all amounts which Brooks received from said pension plan after he attained the age of 60 would be includable as gross income. This assertion is made by the Treasury Department despite the fact that under the retirement plan, if the employee had voluntarily retired, his pension income could have been a lesser amount than he would have received had he worked until age 65. No evidence was introduced as to any existing practice of the employer to encourage or not to encourage early retirement.

■■ The Court is aware that Treasury regulations must be sustained unless unreasonable and plainly inconsist-

ent with the revenue statutes. However, an income tax regulation cannot take away a benefit conferred by the Internal Revenue Code. Dorfman v. Commissioner of Internal Revenue, 394 F.2d 651, 655 (2d Cir. 1968); Smith v. Commissioner of Internal Revenue, 332 F.2d 671 (9th Cir. 1964).

■ The Court concludes that to the extent the Treasury regulation requires that income tax exclusions automatically terminate when an employee becomes eligible for service retirement, it is invalid as adding an unauthorized restriction on a statutory benefit. It is the feeling of this Court that to permit the application of the Treasury regulation would circumvent the intent of Congress. Walsh v. United States, 322 F.Supp. 613 (E.D. N.Y.1970); Watson v. United States, 246 F.Supp. 755 (E.D.Tenn.1965).

It is of interest to the Court that, after many decisions following this rationale, Congress has not seen fit to change the statute to effect the position taken by the Treasury Department.

■ Since it is stipulated that Cordell Brooks was absent from work in 1968 because of disability, he is entitled to the exclusion.

A judgment shall be entered in favor of the plaintiff on the basis of recomputation by the Internal Revenue Service. An appropriate order will be tendered by the parties to the Court for entry.

## APPENDIX A

Internal Revenue Code of 1954 (26 U. S.C.):

*Sec. 61. Gross income defined.*

(a) *General definition.*—Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items:

\*   \*   \*   \*   \*   \*

(11) Pensions;

\*   \*   \*   \*   \*   \*

*Sec. 105.* [as amended by Sec. 205 (a); Revenue Act of 1964, P.L. 88–

272, 78 Stat. 19] *Amounts received under accident and health plans.*

\* \* \* \* \* \*

(d) *Wage continuation plans.*— Gross income does not include amounts referred to in subsection (a) if such amounts constitute wages or payments in lieu of wages for a period during which the employee is absent from work on account of personal injuries or sickness; but this subsection shall not apply to the extent that such amounts exceed a weekly rate of $100. The preceding sentence shall not apply to amounts attributable to the first 30 calendar days in such period, if such amounts are at a rate which exceeds 75 percent of the regular weekly rate of wages of the employee (as determined under regulations prescribed by the Secretary or his delegate). If amounts attributable to the first 30 calendar days in such period are at a rate which does not exceed 75 percent of the regular weekly rate of wages of the employee, the first sentence of this subsection (1) shall not apply to the extent that such amounts exceed a weekly rate of $75, and (2) shall not apply to amounts attributable to the first 7 calendar days in such period unless the employee is hospitalized on account of personal injuries or sickness for at least one day during such period. If such amounts are not paid on the basis of a weekly pay period, the Secretary or his delegate shall by regulations prescribe the method of determining the weekly rate at which such amounts are paid.

\* \* \* \* \* \*

## APPENDIX B

Treasury Regulation 1.79–2(b) (3):

(3) *Retirement age.* For purposes of section 79(b) (1) and this section, the meaning of the term "retirement age" is determined in accordance with the following rules—

(i) (a) If the employee is covered under a written pension or annuity plan of the employer providing such individual group-term life insurance on his life (whether or not such plan is qualified under section 401(a) or 403(a)), then his retirement age shall be considered to be the earlier of—

(1) The earliest age indicated by such plan at which an active employee has the right (or an inactive individual would have the right had he continued in employment) to retire without disability and without the consent of his employer and receive immediate retirement benefits computed at either the full rate or a rate proportionate to completed service as set forth in the normal retirement formula of the plan, i. e., without actuarial or similar reduction because of retirement before some later specified age, or

(2) The age at which it has been the practice of the employer to terminate, due to age, the services of the class of employees to which he last belonged.

(b) For purposes of (a) of this subdivision, if an employee is covered under more than one pension or annuity plan of the employer, his retirement age shall be determined with regard to that plan which covers that class of employees of the employer to which the employee last belonged. If the class of employees to which the employee last belonged is covered under more than one pension or annuity plan, then the employee's retirement age shall be determined with regard to that plan which covers the greatest number of the employer's employees.

(ii) In the absence of a written employee's pension or annuity plan described in subdivision (i) of this subparagraph, retirement age is the age, if any, at which it has been the practice of the employer to terminate, due to age, the services of the class of employees to which the particular employee last belonged, provided such age is reasonable in view of all the pertinent facts and circumstances.

(iii) If neither subdivision (i) or (ii) of this subparagraph applies, the retirement age is considered to be age 65.