NATIONAL LIFE AND ACCIDENT
INSURANCE COMPANY,
Plaintiff-Appellee,

v.

UNITED STATES of America,
Defendant-Appellant.

No. 75–1272.

United States Court of Appeals,
Sixth Circuit.

Argued June 13, 1975.

Decided Oct. 23, 1975.

Before EDWARDS and CELE-BREZZE, Circuit Judges, and CECIL, Senior Circuit Judge.

CECIL, Senior Circuit Judge.

This is an appeal from judgment of the United States District Court for the Middle District of Tennessee, in favor of The National Life and Accident Insurance Company, plaintiff-appellee. The subject under review involves an interpretation of certain sections of the Internal Revenue Code as amended in 1959 (Sec. 801 *et seq.*). The case was submitted to the trial court upon an agreed statement of facts. The facts as found by the trial judge in his memorandum opinion are not in dispute and we accept them as the pertinent facts of the case for the purpose of this review. Reference is hereby made to that opinion as reported at 381 F.Supp. 1034, (D.C. Tenn.). This Court has jurisdiction over the subject matter and the parties under Sec. 1291, Title 28 U.S.C.

The action was brought by National against the United States for a refund of a portion of taxes which it paid under assessment by the Internal Revenue Service for the years 1964, 1965 and 1966. The amount involved is $803,-021.94 exclusive of interest. It is conceded that this amount arises from reserves increased by National for the years in question, known in insurance parlance as strengthening the reserves on non-participating policies. The technical terms in connection with the operation of insurance companies and their methods of accumulating reserves are

explained at length in the trial judge's opinion. There is no dispute by the parties with reference thereto and we do not describe them in detail here.

Specifically, the issue is whether National, for income tax purposes, may take the ten per cent deduction for reserve strengthening (809(d)(5) Internal Revenue Code) in the taxable year or if it must spread the deduction over a period of ten years, beginning the year following the accumulation (810(d)(1) and 809(d)(2)).

■■■ The trial judge wrote a comprehensive opinion, (as above cited) with which we agree, sustaining the position of National. We affirm. The trial judge followed the Fourth Circuit in *Jefferson Standard Life Insurance Co. v. United States,* 408 F.2d 842, 850 (4th Cir.) *Cert. den.* 396 U.S. 828, 90 S.Ct. 77, 24 L.Ed.2d 78 (1969).[1] We likewise accept the conclusion of this Court on the question before us as the law of the case.[2]

At the outset the government relies on Treas.Reg. 1.809–5(a)(5)(III). The regulation, in pertinent part, provides:

"In the case of the adjustments required by section 810(d) (relating to adjustment for change in computing reserves) the increase in life insurance reserves attributable to reserve strengthening shall be taken into account in accordance with the rules prescribed in section 810(d) and Sec. 1.810–3."

The trial judge and the Court in *Jefferson Standard, supra,* held this regulation to be invalid. A treasury regulation may implement a statute but it can not supplement it. As the trial judge said in his opinion,

"Treasury Regulations must be sustained if they implement the congressional mandate in some reasonable manner, but that principle sets the framework for judicial analysis and does not displace it. A regulation which is unrealistic and unreasonable is invalid. *United States v. Cartwright,* 411 U.S. 546, 93 S.Ct. 1713, 36 L.Ed.2d 528 (1973). An income tax regulation cannot take away a benefit conferred by the Internal Revenue Code. *Brooks v. Commissioner,* 473 F.2d 829 6th Cir. 1973 *aff'g* 339 F.Supp. 1031 (M.D.Tenn.1971); *Dorfman v. Commissioner,* 394 F.2d 651 (2nd Cir. 1968). Nor may the Commissioner add a restriction to the statute which is not contained in the statute. *Smith v. Commissioner,* 332 F.2d 671 (9th Cir. 1964)."

The Courts and the Commissioner do not have the power to repeal or amend the enactments of the legislature even though they may disagree with the result; rather it is their function to give the natural and plain meaning effect to statutes as passed by Congress. See e. g. *International Trading Co. v. Commissioner,* 484 F.2d 707, 711, 713 (7th Cir. 1973); *Busse v. Commissioner,* 479 F.2d 1147, 1152 (7th Cir. 1973).

Finding as we do that this regulation is an attempt to extend the meaning of the statute, we hold that it is invalid. This brings us then to an interpretation of the statutes unaided by the Regulation.

Section 810(d)[3] establishes the so-called "spread rule" and it provides that certain life insurance reserves shall only be taken into account as a deduction ratably over the 10 years following the year in which they were experienced. In ap-

---

1. Application for writ of certiorari was made by the Insurance Company and the issue now before us, as stated by appellee (app. brief p. 29, note 11) was not considered by the Court in denying the writ.

2. We note that in *Jefferson Standard* (cited in text herein) the Fourth Circuit seems to indicate that the reserves which give rise to the

10% deduction under 809(d)(5) are not otherwise deductible under the code. We do not accept this as an accurate statement. These reserves are 100% deductible under 809(d)(2), but this difference with the Fourth Circuit does not affect our adoption of *Jefferson's* otherwise sound logic and conclusions on the issue before us.

3. See App.

plying this "spread rule" it is significant to note that Sec. 809(d)(2) specifically refers to Sec. 810 as it provides for a deduction to the extent of:

> "The net increase in reserves which is required by Sec. 810 to be taken into account for purposes of this paragraph." (Int.Rev.Code of 1954, Sec. 809(d)(2).)

The reference to Sec. 810 quoted above is made complete by Sec. 810(d)(1)(B)(i) as it specifically refers back to Sec. 809(d)(2).[4] It is equally significant that there is no such cross reference between Sec. 809(d)(5) and Sec. 810. If Congress had meant subsection (d)(5) to be applied in connection with the spread rule of Sec. 810(d), it would have so stated. The foregoing conclusion is supported by an examination of the whole Part of the Code dealing with the taxation of Life Insurance Companies, for such an examination reveals numerous cross references between the sections of that Part of the Code, thus demonstrating that Congress was extremely careful in its drafting of this portion of the Code.[5] Congress's meticulous drafting of this Part of the Code indicates that had it meant for Sec. 809(d)(5) to be subject to the spread rule of Sec. 810(d) it would have included a cross reference in these sections.

The purpose for the deduction under Sec. 809(d)(2) is to accurately reflect the income of an insurance company.[6] The spread rule of Sec. 810(d) was included to prevent the insurance companies from distorting the reflection of that income by adopting new mortality tables and different assumptions with respect to collection of premiums and payment of benefits.[7] The deduction allowed by Sec. 809(d)(5) serves an entirely different purpose. The Congress created this deduction to equalize the tax positions of mutual and stock insurance companies.[8] Because of the difference in the purposes, we then reject the government's argument that it was the reasonable intent of the Congress that since a portion of the deductions of paragraphs (2) and (5) of subsection 809(d) are attributable to the same reserve strengthening they must have meant for the two deductions to be treated in the same manner, i. e. in accordance with the spread rule. Moreover, in the committee reports on this legislation, both the House and the Senate only discussed the application of the spread rule in connection with Sec. 809(d)(2). Neither congressional body made any specific cross reference between Sec. 809(d)(5) and Sec. 810(d).[9] We conclude that Sec. 809(d)(5) is not subject to the spread rule of Sec. 810(d).

Affirmed.

### APPENDIX

Sec. 809. In general

> (d) Deductions—For purposes of subsections (b)(1) and (2), there shall be allowed the following deductions:

> (2) Increases in certain reserves.—The net increase in reserves which is required by section 810 to be taken into account for purposes of this paragraph. . . .

> (5) Certain nonparticipating contracts. An amount equal to 10 percent of the increase for the taxable year in the reserves for nonparticipating contracts. . . . For purposes of this paragraph, the term "reserves for nonparticipating con-

---

4. See App.

5. For a complete discussion of the cross referencing which occurs in the subject Part of the Internal Revenue Code, see District Court's Opinion, D.C.Tenn., 381 F.Supp. 1034, 1046.

6. H.Rep.No.34, 86th Cong., 1st Sess. (1959–2 Cum.Bull. 742–743) (1959); S.Rep.No.291, 86th Cong., 1st Sess. (1959–2 Cum.Bull. 785) (1959).

7. H.Rep.No.34, *supra* note 3 (1959–2 Cum.Bull. 749).

8. For a complete discussion of the relative tax positions of mutual and stock insurance companies, see Appendix I to the District Court's opinion 381 F.Supp. at 1048–1053. See also, H.Rep.No.34, *supra* note 3 (1959–2 Cum.Bull. 744–745); S.Rep.No.291, *supra* note 3 (1959–2 Cum.Bull. 777–778, 786).

9. H.Rep.No.34, *supra* note 3 (1959–2 Cum.Bull. 736); S.Rep.No.291, *supra* note 3 (1959–2 Cum.Bull. 770).

**562**

tracts" means such part of the life insurance reserves (excluding that portion of the reserves which is allocable to annuity features) as relates to nonparticipating contracts (other than group contracts). . . .

Sec. 810. Rules for Certain Reserves

(d) Adjustment for change in computing reserves.

(1) In general.—If the basis for determining any item referred to in subsection (c) as of the close of any taxable year differs from the basis for such determination as of the close of the preceding taxable year, then so much of the difference between—

(A) the amount of the item at the close of the taxable year, computed on the new basis, and

(B) the amount of the item at the close of the taxable year computed on the old basis, as is attributable to contracts issued before the taxable year shall be taken into account for purposes of this subpart as follows:

(i) if the amount determined under subparagraph (A) exceeds the amount determined under subparagraph (B), ¹⁄₁₀ of such excess shall be taken into account, for each of the succeeding 10 taxable years, as a net increase to which section 809(d)(2) applies; or

(ii) if the amount determined under subparagraph (B) exceeds the amount determined under subparagraph (A), ¹⁄₁₀ of such excess shall be taken into account for each of the 10 succeeding taxable years, as a net decrease to which section 809(c)(2) applies.