105 F.3d 322
 79 A.F.T.R.2d 97-719, 97-1 USTC P 50,180,
25 Media L. Rep. 1337
 OHIO PERIODICAL DISTRIBUTORS, INC., formerly known as Scott
Krauss News Agency, Inc.; Ronald E. Scherer Trust and Linda
S. Hayner Trust, persons other than the tax matters person,
Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
 No. 96-1136.
 United States Court of Appeals,
Sixth Circuit.
 Argued Dec. 3, 1996.
Decided Jan. 29, 1997.
 
 Daniel M. Davidson (argued and briefed), John F. Wester, Griffith L. Green, Sidley & Austin, Washington, DC, for Ohio Periodical Distributors, Inc., Ronald E. Scherer Trust, Linda S. Hayner Trust.
 Gary R. Allen, Acting Chief (briefed), John A. Dudeck (argued), Teresa McLaughlin, U.S. Department of Justice, Appellate Section Tax Division, Washington, DC, for C.I.R.
 Before: MERRITT, KENNEDY, and GUY, Circuit Judges.
 GUY, J., delivered the opinion of the court, in which MERRITT, J., joined. KENNEDY, J. (pp. 327-29), delivered a separate dissenting opinion.
 RALPH B. GUY, Jr., Circuit Judge.
 
 
 1
 Petitioner, Ohio Periodical Distributors, Inc., a subchapter S corporation, appeals judgment for the respondent, Commissioner of Internal Revenue, in taxpayer's petition for readjustment action.[1] The sole issue in this case involves the validity of Treas. Reg. § 1.458-1(g), interpreting I.R.C. § 458. Section 458 authorizes distributors and publishers of periodicals to exclude from gross income the income earned for magazines and paperbacks that are returned for credit shortly after the end of the tax year in which the income was received. Petitioners contend that Treas. Reg. § 1.458-1(g), which requires taxpayers electing to exclude income under § 458 to reduce excluded income by the value of the cost of goods sold where the taxpayer is fully credited for the returned merchandise, is inconsistent with § 458. Based on our review of the record and the arguments presented, we conclude that the tax court properly determined that the regulation is valid, and we affirm.
 
 I.
 
 2
 Ohio Periodical Distributors, Inc. (taxpayer) is a wholesale distributor of magazines and paperback books. Taxpayer is an Ohio corporation with its principal place of business in Dublin, Ohio. Consistent with industry practice, taxpayer sells magazines and paperbacks to its retail customers in quantities in excess of customers' expected sales. The excess merchandise, nevertheless, is used by the retail customers for display purposes as well as to satisfy unexpected consumer demand. Taxpayer and its suppliers agree to take back for credit the unsold product, known as "returns." Thus, taxpayer gives its retail customers a credit and receives a credit from its publisher suppliers.
 
 
 3
 Prior to changes in the tax laws, accrual-method taxpayers like Ohio Periodical could reduce income to reflect returned items only in the taxable year that the items were actually returned. At the same time, generally accepted methods of accounting allowed them to record sales at the time merchandise was shipped and to establish an offsetting reserve for estimated returns.
 
 
 4
 Congress viewed the disparity between tax accounting practices and generally accepted accounting methods as unfair and as inaccurately reflecting taxpayers' income. See S.REP. NO. 95-1278, at 4 (1978). Consequently, in 1978, it enacted I.R.C. § 458. That provision allows taxpayers who use the accrual method of accounting to exclude income from returns, also known as qualified sales, see id. § 458(b)(5), from gross income even though the returns are received at the beginning of the following tax year. By illustration, a distributor who sells 100 books in tax year one but receives 20 back within the first few months of tax year two could report gross income for tax year one based on only 80 books.
 
 
 5
 In 1982, Ohio Periodical elected to apply I.R.C. § 458 to its sales. Two years later it became a subchapter S corporation, allowing it to pass through its income and losses to shareholders. See id. § 1361.
 
 
 6
 On August 31, 1984, respondent promulgated proposed regulations construing § 458. These regulations were finally adopted on August 26, 1992, effective retroactively to August 31, 1984. See Certain Returned Magazines, Paperbacks or Records, 57 Fed.Reg. 38,595 (1992) (to be codified at Treas. Reg. § 1.458-1). In pertinent part, those regulations require "a cost of goods sold offset against sales revenue in determining the amount of income excluded from gross income under section 458." Id. at 38,596. The offset is only required "in situations in which the taxpayer holds returned merchandise for resale or is entitled to a credit from its supplier. In the latter case, the amount of the required adjustment is equal to the amount of the taxpayer's credit from its supplier." Id.
 
 
 7
 Commentators to the proposed regulations argued against the cost of goods sold adjustment. Id. The Commissioner rejected these arguments, however, on the ground that the exclusion is determined on the basis of gross income. Gross income, as it applies to manufacturing or merchandising trades or businesses, is determined by subtracting cost of goods sold from sales revenue. Id. (citing Treas. Reg. § 1.61-3(a)). Thus, any adjustment to gross income based on sales revenue concomitantly requires an adjustment to cost of goods sold. The Commissioner further relied upon I.R.C. § 446, which provides that accounting methods "clearly reflect income." Id. § 446(b).
 
 
 8
 Ohio Periodical, in electing to apply § 458, excluded income from returns from its gross income, but did not make any adjustment to cost of goods sold. By illustration, if it sold 100 books in tax year one at $1/each with a cost of goods sold of $0.75 per book and received 20 books back during the applicable return period in tax year two, it reported gross income of $5: ((100 X $1)-(100 X .75)-(20 X $1)).
 
 
 9
 In March 1994, the Commissioner of Internal Revenue issued to taxpayer two notices of final S corporation administrative adjustment for tax years 1985-1988. The computations in those notices recalculated taxpayer's calculations to include adjustments to cost of goods sold to reflect greater gross income. Using the above illustration, by example, taxpayer should have reported gross income of $20, instead of $5: (100 X $1)-(100 X .75)-(20 X $1) + (20 X .75).
 
 
 10
 In response, petitioners filed a petition for readjustment. In support, petitioners argued that Treas. Reg. § 1.458-1(g) is inconsistent with I.R.C. § 458.[2] The tax court rejected petitioners' challenge. Ohio Periodical Distrib., Inc. v. Commissioner, 68 T.C.M. (RIA) p 95,496, 1995 WL 605422 (Oct. 16, 1995). The court noted that petitioners' counsel had represented another petitioner on this same issue in Hachette USA, Inc. v. Commissioner, 105 T.C. 234, 1995 WL 563984 (1995), aff'd, 87 F.3d 43 (2d Cir.1996), presenting a substantially verbatim argument. 68 T.C.M. (RIA) at 95-3117. Consequently, the court followed its earlier decision in Hachette, and upheld the regulation. Petitioners now appeal.
 
 II.
 
 11
 We thus consider whether Treas. Reg. § 1.458-1(g) reflects a proper construction of I.R.C. § 458. The United States Supreme Court, in Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), set forth the standard for assessing challenges to regulations:
 
 
 12
 When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.
 
 
 13
 Id. at 842-43, 104 S.Ct. at 2781-82 (citations and footnotes omitted).
 
 
 14
 As an initial matter, therefore, we consider whether "Congress has directly spoken" to whether adjustments must be made to cost of goods sold for returns. Section 458 provides in pertinent part as follows:
 
 
 15
 Exclusion from gross income.--A taxpayer who is on an accrual method of accounting may elect not to include in the gross income for the taxable year the income attributable to the qualified sale of any magazine, paperback, or record which is returned to the taxpayer before the close of the merchandise return period.
 
 
 16
 I.R.C. § 458(a). Based on this language, we conclude there is simply nothing in the quoted language or in any other part of the statute that addresses adjustments for cost of goods sold. At most, petitioners argue that the Commissioner's interpretation requiring adjustment is "inconsistent" with the statute's language referring to the "amount excluded," see id. § 458(b)(6), or the "dollar amount of returned merchandise," see id. § 458(e)(2).
 
 I.R.C. § 458(b)(6) provides as follows:
 
 17
 Amount excluded.--The amount excluded under this section with respect to any qualified sale shall be the lesser of--
 
 
 18
 (A) the amount covered by the legal obligation described in paragraph (5)(A), or
 
 
 19
 (B) the amount of the adjustment agreed to by the taxpayer before the close of the merchandise return period.
 
 
 20
 I.R.C. § 458(b)(6). Petitioners argue that this language controls subsection (a)'s reference to exclusion from gross income. While we agree that the language relates back to subsection (a), it is hardly clear that "the amount excluded under this section with respect to any qualified sale" precludes any adjustment to that amount for cost of goods sold for purposes of calculating "gross income for the taxable year," as referenced in subsection (a).
 
 
 21
 Nor do we find § 458(e) to be controlling. That provision relates to suspense accounts for paperbacks and records. The provision allows taxpayers electing § 458 to use these accounts instead of the change in accounting methods adjustments provided under § 481. See I.R.C. § 458(e)(1). Under § 458(e)(2), the opening balance of a suspense account is based on the "dollar amount of the returned merchandise." Under § 458(e)(3), at the close of the taxable year, the account shall be reduced by the excess of the opening balance over "the amount excluded from gross income for the taxable year under [§ 458(a) ]" or increased by the excess of "the amount excluded from gross income for the taxable year under [§ 458(e)(4) ]," over the opening balance. Under § 458(e)(4), any reduction in the suspense account balance is excluded from gross income, and any increase is added. While this language contemplates suspense account computations under subsection (e) to be calculated on a gross receipts basis, there is nothing in that provision that speaks "to the precise question" whether a cost of goods adjustment should be properly made under subsection (a). Given that petitioners have failed to point to any language in the statute that precludes cost of goods sold adjustments, taxpayer has failed to demonstrate under Chevron that we may not consider the reasonableness of the Commissioner's interpretation of the statute.[3]
 
 
 22
 Under the second prong of Chevron, when Congress has not directly addressed the precise question, we consider whether the agency's interpretation is based on a permissible construction of the statute. 467 U.S. at 843, 104 S.Ct. at 2782. In Chevron, the Court concluded that Congress did not have a specific intent in enacting the Clean Air Act Amendments regarding individual treatment of pollution-emitting devices within an industrial grouping, thus allowing regulations to treat all devices within a single "bubble" for purposes of determining plant emissions compliance. Under the articulated standard of review, the Court upheld the regulations concluding that the Environmental Protection Agency's construction of the statute was a "reasonable policy choice for the agency to make." Id. at 845, 104 S.Ct. at 2783.
 
 
 23
 Similarly in this case, where Congress has not spoken precisely to whether in excluding income from returns from gross income, cost of goods sold should offset sales revenue for purposes of calculating that exclusion, we must consider whether such an offset was "a reasonable policy choice." We conclude that it was. First, petitioners' position requires us to conclude that Congress afforded publishers and distributors a significant tax benefit without ever stating so on the record. Nowhere in the legislative history cited by petitioners does Congress ever indicate that it meant to allow the exclusion of income without the concomitant offset for cost of goods sold. As the tax court concluded in Hachette, this issue was an accounting component that Congress never addressed. See 105 T.C. at 245.
 
 
 24
 Moreover, the agency's approach is consistent with the purpose of the statute, to reflect more accurate reporting of these taxpayers' income. See, e.g., S.REP. NO. 95-1278, at 4 (1978) ("the present method of tax accounting for returns of magazines, paperbacks, and records does not accurately measure income for Federal income tax purposes"). The new system, however, in no way suggests that it is superseding such fundamental tenets of the Code as the concept of gross income. To the extent the taxpayer backs out sales revenues for returns from the equation for calculating gross income, it must logically offset any such deduction by the cost of the goods sold, which, as the term "goods sold" reflects, no longer applies to returned inventory. By the same token, the regulation provides that to the extent the taxpayer neither holds returned merchandise for resale nor receives a credit for returned merchandise from its supplier, the cost of goods sold remains validly deducted. See Treas. Reg. § 1.458-1(g)(1)-(2).
 
 
 25
 Other provisions in the Code support the Commissioner's approach. For example, I.R.C. § 446 requires that accounting methods "clearly reflect income." Id. § 446(b). Similarly, inventories are to be accounted for in the manner "most clearly reflecting the income." Id. § 471(a). To allow petitioners to deduct cost of goods sold for merchandise that remains available in inventory or for which petitioners have been credited would directly contravene these provisions. Absent a clearer indication from Congress, we will not read these various provisions to create such discord. See, e.g. Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 445, 107 S.Ct. 2494, 2499, 96 L.Ed.2d 385 (1987) (longstanding practice of reading statutes in pari materia precludes federal court from superseding related statutes "without plain evidence of congressional intent").
 
 
 26
 Lastly, petitioners argue that no adjustment is required because the returns reflect "promotional costs." The only authority for this argument appears to be a prior version of § 458 that referred to periodicals shipped for display purposes. Staff of the Joint Comm. on Taxation, 95th Cong., 1st Sess., Description of Technical and Minor Bills Listed for A Hearing Before the Subcomm. on Miscellaneous Revenue Measures of the Comm. on Ways and Means 29 (Comm. Print 1977). Even if returns were viewed as promotional devices, rather than sales, petitioners still would not prevail. Judge Laro, in his opinion for the tax court in Hachette, addressed this argument:
 
 
 27
 Petitioners would have us believe that Congress intended the same promotional costs to be deducted twice: once by the publisher who actually bore them and once by the distributor like Curtis who is fully reimbursed. This treatment obviously has the potential to become an abusive tax shelter: one can imagine a lengthening of the distribution chain through the interposition between publisher and retail merchant of additional, unnecessary wholesalers that enjoy the benefit of a deduction without committing any resources or bearing risk. In the absence of any direct evidence, we refuse to believe that Congress would have been so indiscriminate and foolhardy in the bestowal of tax benefits.
 
 
 28
 105 T.C. at 248.
 
 
 29
 AFFIRMED.
 
 
 30
 KENNEDY, Circuit Judge, dissenting.
 
 
 31
 I respectfully disagree with the conclusion of the majority because I believe that the regulation at issue, 26 C.F.R. § 1.458-1(g), contradicts the clear dictates of 26 U.S.C. § 458.
 
 
 32
 Regulations may not conflict with or amend unambiguous provisions of the tax code. See Koshland v. Helvering, 298 U.S. 441, 447, 56 S.Ct. 767, 770, 80 L.Ed. 1268 (1936). Accordingly, "[t]he Courts and the Commissioner do not have the power to repeal or amend the enactments of the legislature even though they may disagree with the result; rather it is their function to give the natural and plain meaning effect to statutes as passed by Congress." National Life & Accident Ins. Co. v. United States, 524 F.2d 559, 560 (6th Cir.1975); accord United States v. Vogel Fertilizer Co., 455 U.S. 16, 24, 102 S.Ct. 821, 827, 70 L.Ed.2d 792 (1982) (invalidating tax regulation which purported to "interpret" definition which Congress already had defined with "considerable specificity"); United States v. Calamaro, 354 U.S. 351, 359, 77 S.Ct. 1138, 1143-44, 1 L.Ed.2d 1394 (1957) (invalidating tax regulation as "an attempted addition to the statute of something which is not there"). Although defendant has the authority under 26 U.S.C. § 446(b) to determine whether an accounting method "clearly reflects income," defendant may not invoke § 446(b) to reject a method of accounting specifically authorized by Congress merely because it fails to embody the Commissioner's particular view of clearly reflected income. See Southern Cal. Sav. & Loan Ass'n v. Commissioner of Internal Revenue, 95 T.C. 35, 41, 1990 WL 91243 (1990); Williams v. Commissioner of Internal Revenue, 94 T.C. 464, 470, 1990 WL 29267 (1990), aff'd on other grounds, 1 F.3d 502 (7th Cir.1993).
 
 
 33
 The majority reasons in part that § 1.458-1(g) is valid because "it is hardly clear" that language in the heading of § 458(b)(6) precludes its adjustment procedure. Although the majority discusses §§ 458(a) and 458(b)(6), it fails to discuss § 458(b)(5)(A). That provision, which controls the "amount covered by the legal obligation" to which § 458(b)(6)(A) refers, provides:
 
 
 34
 (5) Qualified sale.-- A sale of a magazine, paperback, or record is a qualified sale if--
 
 
 35
 (A) at the time of sale, the taxpayer has a legal obligation to adjust the sales price of such magazine, paperback, or record if it is not resold....
 
 
 36
 26 U.S.C. § 458(b)(5)(A) (emphasis added).
 
 
 37
 Collectively, sections 458(a), 458(b)(5)(A) and 458(b)(6) indicate that Congress has created an explicit accounting procedure which § 1.458-1(g) improperly attempts to amend. First, § 458(a) provides for an exclusion from gross income of "income attributable to [a] qualified sale." See 26 U.S.C. § 458(a). Section 458(b)(6) then defines the "amount excluded" by explaining that it shall be the lesser of either a sum previously agreed to by the taxpayer or the "amount covered by the legal obligation described" in § 458(b)(5)(A). See id. at § 458(b)(6) (emphasis added). Finally, § 458(b)(5)(A) defines a "qualified sale" as a sale for which the taxpayer has a "legal obligation to adjust the sales price of such magazine, paperback, or record if it is not resold." Id. at § 458(b)(5)(A) (emphasis added). Although interpretation of § 458 requires more than a single step, the statute inevitably provides that a taxpayer may exclude from its gross income an amount precisely equal to the sum of the sales prices of returned items.
 
 
 38
 The section controlling the suspense account which a taxpayer must establish when adopting § 458's accounting methods, 26 U.S.C. § 458(e), confirms that a taxpayer may exclude from gross income an amount exactly equal to the gross receipts attributable to its qualified sales. A taxpayer must base the opening balance of its suspense account upon "the largest dollar amount of returned merchandise" which the taxpayer would have taken into account under § 458 for any of the three preceding years if it then had been employing the statute's method of accounting. See 26 U.S.C. § 458(e)(2) (emphasis added). Sections 458(e)(3) and 458(e)(4) then provide that a taxpayer annually must adjust both its suspense account and its gross income by an amount equal to the difference between the opening balance of the account, a figure calculated according to the dollar amount of qualified sales of the prior year, and the "amount excluded from gross income" under § 458(a) for the current year. In order for these calculations to make sense, § 458(e) must contemplate that the amount excluded under § 458(a) mirrors every other figure in § 458(e) by representing the gross receipts, not gross profits, attributable to qualified sales. Language at the end of § 458(e) provides a final confirmation by discussing a comparison between the opening balance of the suspense account and "the dollar amount of returned merchandise which would have been taken into account under subsection (a)." Id. at 458(e).[1]
 
 
 39
 Defendant repeatedly insists that Congress must have meant that a taxpayer not receive a tax deduction for costs relating to returned merchandise for which the taxpayer will receive credit because an opposite interpretation would violate the general accounting principle of matching revenue with related expenses. Although defendant correctly characterizes general accounting principles, the regulation at issue injects a substantive addition to § 458 which simply does not exist in the statute as written.
 
 
 40
 The Tax Court below relied exclusively upon the recent decision in Hachette USA, Inc. v. Commissioner of Internal Revenue, 105 T.C. 234, 1995 WL 563984 (1995), aff'd, 87 F.3d 43 (2d Cir.1996) (per curiam), which ultimately concluded that the legislative history behind § 458 reveals that § 1.458-1(g) does not conflict with the statute. Resort to legislative history, however, is both unnecessary and improper because the statute is sufficiently clear. See, e.g., Tennessee Valley Auth. v. Hill, 437 U.S. 153, 184 n. 29, 98 S.Ct. 2279, 2296-97 n. 29, 57 L.Ed.2d 117 (1978); United States v. Winters, 33 F.3d 720, 721 (6th Cir.1994), cert. denied, --- U.S. ----, 115 S.Ct. 1148, 130 L.Ed.2d 1107 (1995). Regardless, the legislative history of § 458 fails to support defendant. Although defendant quotes extensively from the legislative record, the passages quoted only refer vaguely to broad concepts regarding "equity," "fairness," and the "accurate reflection of income," principles upon which both parties of course purport to rely. As the Hachette court noted, "one is struck by the complete absence [in the legislative history] of any explicit reference to the cost side of the relevant gross income computation." Hachette, 105 T.C. at 244. Further, the Hachette court stated that "[w]e can only conclude that Congress simply was not concerned with the inventory and cost accounting issues that the returned merchandise problem involved." Id. at 245. Although the Hachette court viewed this utter silence as an invitation to address a perceived oversight, the absence of legislative history contrary to the plain meaning of the statute confirms that Congress meant what it said. See Wright v. Finance Serv. of Norwalk, Inc., 22 F.3d 647, 650-51 (6th Cir.1994).
 
 
 41
 The practical effect of striking down § 1.458-1(g) would be to allow distributors to delay for one year paying taxes on the credit which they receive from publishers to pay for the costs of returned merchandise. The regulation promulgated by defendant indeed may represent an objective improvement upon § 458. A regulation, however, may not alter the stated will of Congress, no matter how misguided in its use of language Congress may have been. See, e.g., Calamaro, 354 U.S. at 357, 77 S.Ct. at 1142; National Life, 524 F.2d at 560.
 
 
 42
 I therefore respectfully dissent.
 
 
 
 [1]
 Petitioners Ronald E. Scherer Trust and Linda S. Hayner Trust are shareholders of taxpayer and notice persons under the Internal Revenue Code for purposes of administrative readjustment actions. See I.R.C. §§ 6226(b)(1), 6231(a)(8). They filed the petition for readjustment. See id. § 6226(b)
 
 
 [2]
 The parties do not dispute that if the regulation is upheld, petitioners owe the amounts calculated by respondent
 
 
 [3]
 Petitioners also claim that the adjustment conflicts with subprovision (c) of § 458. That subprovision provides in pertinent part that elections under § 458 "may be made without the consent of the Secretary," I.R.C. § 458(c)(1), and that computations of taxable income under § 458 "shall be treated as a method of accounting," id. § 458(c)(4). Nothing in these excerpts precludes cost of goods sold adjustments, however. While election may be made without prior approval, that does not suggest one need not adhere to the statute's provisions and any valid implementing regulations. Moreover, the statute's explicit recognition that computations be made as an accounting method only reinforces the issue as to what proper accounting procedures are required. This question, in turn, has been addressed by the Commissioner in Treas. Reg. § 1.458-1(g), whose reasonableness we now consider
 
 
 [1]
 In a document filed after oral argument, the Commissioner concedes that "we now wish to clarify that we do not disagree with the taxpayer's general contention that the language of Section 458(e) contemplates suspense account computations on a gross receipts basis--i.e., the largest dollar amount of returned merchandise and the amount of gross receipts excluded from gross income for the taxable year computed under Section 458(a)." The Commissioner nevertheless maintains that " § 1.458-1(g)(1) still requires the costs associated with the sales revenues that are excluded from the gross income computation under Section 458(a) to fall from that computation." Although the Commissioner is correct that § 1.458-1(g)(1) requires additional adjustments to gross income, the pertinent issue is whether § 458 allows for such adjustments. It does not